UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Reservoir Corporate Group, LLC | : | Case No. 09-51706 (AHWS) |
| | : | |
| Debtor | : | October 26, 2009 |

### MEMORANDUM OF LAW OF CSFB 2001-CP4 RESEARCH DRIVE, LLC, IN SUPPORT OF ITS MOTION TO DISMISS CHAPTER 11 CASE OR IN THE ALTERNATIVE, FOR RELIEF FROM AUTOMATIC STAY

CSFB 2001-CP4 Research Drive, LLC ("**CSFB 2001-CP4**"), by and through its counsel, Mancuso & Logan LLC and Dechert LLP, submit this Memorandum of Law in Support of its Motion for the Dismissal of Reservoir Corporate Group, LLC's (the "**Debtor**") Chapter 11 Case, or in the Alternative for Relief From Automatic Stay "for cause" in accordance with 11 U.S.C. § 1112(b)(1) and 11 U.S.C. § 362(b)(1).

### I.    BACKGROUND

#### A.    The Loan

On March 22, 2001, Debtor executed a promissory note in favor of Column Financial, Inc. ("**Original Lender**") in the original principal amount of $18,000,000.00 (as amended and/or modified, the "**Note**"), payable to the order of Original Lender as provided therein.

As security for the loan (the "**Loan**") evidenced by the Note, Debtor delivered to Original Lender, inter alia, that certain Mortgage and Security Agreement dated March 22, 2001, recorded on March 21, 2001 in Volume 1764 at Page 254 of the official land records of the City of Shelton, Fairfield County, Connecticut (the "**Shelton Land Records**") (as amended and/or modified, the "**Mortgage**"). The Mortgage (a)

encumbers, inter alia, Debtor's right, title and interest in and to (i) those certain parcels of real property commonly known 4 Research Drive, Shelton, Connecticut and more particularly described therein (the "**Real Property**"), and (ii) certain real and personal property more particularly described in the Mortgage and the UCC (hereinafter defined), which includes, but is not limited to, the improvements located at the Real Property (the "**Personal Property**" and collectively with the Real Property, the "**Property**"), and (b) grants Original Lender an assignment of all rents, royalties, issues, profits, revenue, income and other benefits of the Real Property.

In addition to the Mortgage, Debtor delivered to Original Lender, inter alia, that certain Assignment of Leases and Rents, dated March 22, 2001, recorded on March 26, 2001 in Volume 1764 at Page 320 of the Shelton Land Records (as amended and/or modified, the "**ALR**").

The Note is further secured by, inter alia, a security interest in certain personal property created under the Mortgage and perfected by that certain Financing Statement recorded on March 26, 2001 in Volume 1764 at Page 329 of the Shelton Land Records (the "**UCC**"), and filed with the Connecticut Secretary of State on March 29, 2001, bearing File Number 0002059365 (the "**CT SOS UCC**").

Original Lender assigned the Loan to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2001-CP4 ("**Trustee**") as evidenced, inter alia, by (i) that certain Allonge to Promissory Note that is attached to the Note (the "**First Allonge**"), (ii) that certain Assignment of Mortgage and Security Agreement and Assignment of Leases and Rents made as of March 22, 2001 and recorded on January 22,

2002 in Volume 1896 at Page 243 of the Shelton Land Records (the "**Trustee Loan Assignment**"), (iii) that certain UCC-3 Assignment recorded on January 22, 2002 in Volume 1896 at Page 250 of the Shelton Land Records (the "**Trustee UCC-3 Assignment**"), (iv) that certain UCC-3 Assignment filed with the Connecticut Secretary of State on January 23, 2002, bearing File Number 0002115078 (the "**Trustee CT SOS Assignment**"), and (v) that certain UCC-3 Continuation Statement filed with the Connecticut Secretary of State on October 4, 2005, bearing File Number 0002354427 (the "**Trustee CT SOS Continuation**").

Trustee (acting by and through LNR Partners, Inc., a Florida corporation, pursuant to that certain Limited Power of Attorney, dated as of May 31, 2005, and recorded on August 14, 2008 in Volume 2960, Page 140 of the Shelton Land Records (the "**LPOA**")) assigned the Loan to CSFB 2001-CP4 Research Drive, LLC (together with its predecessors in interest, as the context may require, "**Lender**"), as evidenced, inter alia, by (i) that certain Allonge, dated July 24, 2008, and attached to the Promissory Note (the "**Second Allonge**"), (ii) that certain Assignment of Mortgage and Security Agreement and Assignment of Leases and Rents, dated July 24, 2008 and recorded on August 14, 2008 in Volume 2960 at Page 142 of the Shelton Land Records (the "**2008 Loan Assignment**"), (iii) that certain UCC-3 Assignment recorded on August 14, 2008 in Volume 2960 at Page 148 of the Shelton Land Records (the "**2008 UCC-3 Assignment**"), and (iv) that certain UCC-3 Assignment filed with the Connecticut Secretary of State on August 14, 2008, bearing File Number 0002649891 (the "**2008 CT SOS UCC-3 Assignment**").

CSFB 2001-CP4_Dismiss                     5

The Note (together with the First Allonge and the Second Allonge), the Mortgage, the ALR, the UCC, the CT SOS UCC, the Trustee Loan Assignment, the Trustee UCC-3 Assignment, the Trustee CT SOS Assignment, the Trustee CT SOS Continuation, the 2008 Loan Assignment, the 2008 UCC-3 Assignment and the 2008 CT SOS UCC-3 Assignment, together with all other documents executed and delivered in connection with the Loan, are collectively hereinafter referred to as the "**Loan Documents**". Lender is the owner and holder of the Loan, the Loan Documents, and the liens on the Property created thereby.

### B.  The Foreclosure Action

Debtor defaulted under its obligations under the Note and the other Loan Documents evidencing the Note as a result of, inter alia, its failure to make any payments due thereunder from and after the payment date occurring in May 11, 2008,. By virtue of such defaults, by Complaint dated September 9, 2008, CSFB 2001-CP4 initiated foreclosure proceedings in the Superior Court for the State of Connecticut, Judicial District of Ansonia-Milford, at Milford (the "**Superior Court**"), Case No. AAN-CV-08-5007086-S, styled *CSFB 2001-CP4 Research Drive, LLC v. Reservoir Corporate Group, LLC, et al.* (the "**Foreclosure Proceeding**").

On March 20, 2009, CSFB 2001-CP4 filed an application in the Foreclosure Proceeding to appoint a receiver of rents for the Property (the "**Receiver Application**"). No objection to the Receiver Application was filed by the Debtor.

On August 28, 2009 (the "**Petition Date**"), two business days prior to the date scheduled for the hearing on the Receiver Application, the Debtor filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§

101-1532 (the "**Bankruptcy Code**"). The filing of the Debtor's voluntary petition stayed the Foreclosure Proceeding.

As of August 11, 2009, the outstanding principal balance due CSFB 2001-CP4 under the Note and other Loan Documents was $16,640,942.26, together with past due interest in the amount of $1,634,334.67, default interest in the amount of $1,059,860.85, late fees in the amount of $92,185.35, and an unpaid tax advance in the amount of $124,256.09. Interest continues to accrue with respect to the Loan and the tax advance. The foregoing is in addition to certain other costs incurred by CSFB 2001-CP4 as a result of the aforementioned defaults including, without limitation, collection costs and attorneys' fees.

Upon information and belief, the current fair market value of the Property is $15,500,000.00, materially less than the current amount owed CSFB 2001-CP4.

### C.   **Failure To Manage The Property Pre-Petition**

The Debtor has failed to effectively manage the Property to the detriment of its tenants and creditors.

Debtor has failed to fund payment of the real estate taxes with respect to the Property, and CSFB 2001-CP4 has been forced to fund the same. Specifically, on or around January 31, 2009, CSFB 2001-CP4 paid the property tax bill for the Property in the amount of $124,256.09.

Additionally, Debtor has failed to comply with the terms and conditions set forth in certain leases it has entered into with tenants in occupancy of the Property. Specifically, Debtor failed to reimburse amounts due to tenant Health Net of the Northeast, Inc. ("**Health Net**"), on account of certain tenant improvement charges.

Debtor's failure to reimburse Health Net led to Health Net filing a judgment lien against the Property.

Health Net's judgment lien (the "**Judgment Lien**") is in the principal amount of $992,340.00, plus interest at a rate of 10% per year on the outstanding balance from November 7, 2006 through the date of collection, as well as Health Net's attorneys' fees in the amount of $35,139.50 and Health Net's costs in the amount of $1,701.52. The Judgment Lien was recorded in the Shelton Land Records on January 16, 2008 in Volume 2898 at Page 243.

Upon information and belief, Health Net has and continues to abate its rent to offset the amounts secured by the Judgment Lien.

The filing of the Judgment Lien and the corresponding abatement of Health Net's rent are the result of Debtor's breach of Health Net's lease, and each of the same has contributed to the waste of the Property and the erosion of the Lender's security interest in the Property.

As further evidence of Debtor's failure to effectively manage the Property, based on the limited financial information provided by Borrower, Property revenue has declined materially starting in January, 2008.

### D. Debtor's Bad Acts

Upon information and belief, the Debtor and/or its principals, Robert N. Gibbons ("**Gibbons**") and Mark A. Rubenstein ("**Rubenstein**") have diverted monies collected from the Property for their personal use. Pursuant to that certain Application for Prejudgment Remedy, dated May 1, 2009, filed by Gibbons (acting by and through Debtor) against Rubenstein in the Superior Court for the State of Connecticut, Judicial

CSFB 2001-CP4_Dismiss                         8

District of Stamford/Norwalk at Stamford, and pursuant to that certain Plaintiff's Affidavit in Support of His Application for a Pre-Judgment Remedy, dated April 28, 2009, filed by Gibbons (acting by and through Debtor) against Rubenstein before said Court, Rubenstein knowingly and purposefully (after consultation with Gibbons) diverted a lease termination payment payable to Debtor in the amount of $1,150,000 for Rubenstein's personal use, which termination payment should have been deposited with Lender in accordance with the Loan Documents.

These actions are a clear violation of the Debtor's obligations to CSFB 2001-CP4. Specifically, these actions violate: (a) Sections 1.2, 1.13(a) and 1.33 of the Mortgage; and (b) Sections 1.01 and 1.05(d), (e), (g) and (j) of the Note.

By these acts, the Debtor and its principals have acted in bad faith with respect to the Debtor's tenants and legitimate creditors.

### E. Debtor's Failure to Prosecute its Bankruptcy Proceedings and Preserve the Bankruptcy Estate

Debtor has failed to prosecute its bankruptcy proceedings in accordance with the Bankruptcy Code and this Court's rules, and such failure has jeopardized the property of the Debtor's estate.

Initially, Debtor, a limited liability company, improperly filed its chapter 11 petition pro se and failed to file the schedules associated with its petition. Moreover, upon information and belief, the Debtor never obtained the necessary corporate authority for its bankruptcy filing. The Debtor's constituent documents require, inter alia, the unanimous consent of the members and the affirmative vote of an independent director prior to filing for bankruptcy protection. Although no corporate resolution was attached to the Debtor's bankruptcy petition, upon information and belief, such approval was

never obtained. It was not until a month after the date of Debtor's bankruptcy petition that Debtor actually engaged counsel to represent Debtor in the bankruptcy, and only after engaging counsel did Debtor proceed to file the applicable bankruptcy schedules.

During this month long period, as admitted by Debtor in the meeting of creditors pursuant to section 341 of the Bankruptcy Code (the "**341 Meeting**"), which was held at the Office of the United States Trustee on October 19, 2009, Debtor proceeded to improperly make payments on account of prepetition obligations to various creditors, including, without limitation, by paying counsel engaged in a matter involving a dispute among the Debtor's equity holders. Additionally, Debtor failed to avail itself of the protections granted under Section 366 of the Bankruptcy Code relative to the payment of amounts due utility companies, and as such jeopardized the operations of the Property by risking a shut off of electric service to the Property.

Additionally, Debtor has yet to file a motion to use cash collateral. In fact in response to, inter alia, Debtor's inaction, CSFB 2001-CP4 previously filed a motion to prohibit Debtor's use of cash collateral which motion was stipulated to at the hearing held before the Court on or about September 29, 2009. Despite said stipulation, upon information and belief on or about October 7, 2009 Debtor used CSFB 2001-CP4 cash collateral to pay expenses in the amount of $8,054.95 to the Concord Group.

Although Debtor has recently submitted a proposed budget for purposes of potentially reaching an agreement on a cash collateral order, the budget is wholly inadequate. While the proposed budget provides for the payment of unsubstantiated amounts to various creditors, including, upon information and belief to insiders and/or professional advisors to Debtor or its equity holders, the same lacks any meaningful

detail and does not provide for the payment of any debt service payments to CSFB 2001-CP4. As stated in CSFB 2001-CP4's motion for order prohibiting the use of cash collateral, CSFB 2001-CP4 is entitled to adequate protection.

Moreover, while the Debtor's proposed budget accounts for a monthly set-aside for property taxes, the property taxes due in July 2009 have not been paid, and the Debtor stated at the 341 Meeting that it did not have the money necessary to pay the July 2009 property tax bill.

Debtor's continued failure to manage the Property as noted in Section C above, its bad acts noted in Section D above and its failure to prosecute its own bankruptcy proceedings as noted in this Section E puts the well being of the Lender and the Property's tenants at risk. In addition, such failure has created a risk that these tenants may withhold rent and/or terminate their leases to the detriment of the Debtor's bankruptcy estate, CSFB 2001-CP4, and the Debtor's other creditors.

II. **LEGAL ARGUMENT**

    A. **THE DEBTOR HAS ACTED IN BAD FAITH BY FILING THE WITHIN BANKRUPTCY, AND SUCH BAD FAITH CONSTITUTES "CAUSE" FOR DISMISSAL, OR ALTERNATIVELY, FOR GRANTING CSFB 2001-CP4 RELIEF FROM STAY.**

        1. <u>Bad Faith Constitutes "Cause" For Dismissal of a Bankruptcy Case, or Alternatively, for Granting Relief from the Automatic Stay</u>

11 U.S.C. § 1112(b) provides, in relevant part, that:

(b) (1) [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or

CSFB 2001-CP4_Dismiss                    11

dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.[1]

11 U.S.C. §1112(b).

> 11 U.S.C. § 362(d)(1) provides, in relevant part, that:
>
> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating annulling, modifying, or conditioning such stay
>
> (1) for cause, . . .

11 U.S.C. § 362(d)(1).

Thus, upon a showing of "cause" within the meaning of either 11 U.S.C. § 1112(b) or 11 U.S.C. § 362(d)(1), CSFB 2001-CP4 is entitled to dismissal of this case, or in the alternative, to relief from the automatic stay, as the case may be.

It is well settled law in the Second Circuit that a Debtor's petition for bankruptcy protection may be dismissed if it was filed in bad faith.[2] Additionally, "[a]lthough not

---

[1] Section 1112(b)(4) of the Bankruptcy Code further clarifies: For purposes of this subsection, the term "cause" includes--(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition. This list is not exclusive, and is merely illustrative of examples of "cause." See In re Kaplan Breslaw Ash, LLC, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) While each of Code sections 707(a), 1112(b), 1307(c) and 362(d)(1) states that the authority it provides -- dismissal or relief from stay, respectively -- may be granted for "cause," and lists one or more examples of cause, each precedes the list with the word "includes," and none of those lists is exhaustive.

[2] See In re 698 Flushing Realty Corp., 335 B.R. 17, 19 (Bankr. E.D.N.Y. 2005) for a discussion of a lack of good faith constituting "cause" under 11 U.S.C. § 1112(b); See also.: In re C-TC 9th Ave. P'ship, 113

expressly stated in section 362(d)(1), it is well established that a debtor's bad faith constitutes 'cause' for relief from the automatic stay under that section." In re 68 West 127 Street, LLC, 285 B.R. at 843. As the court explained in In re 234-6 West 22nd St.; "[i]n the context of a motion either to dismiss a chapter 11 case under § 1112(b) or to lift the stay under § 362(d)(1) the standards for bad faith as evidence of cause are not substantively different from each other..."[3]

Accordingly, this Court's determination that the Debtor acted in bad faith in filing its bankruptcy petition would be sufficient basis for this Court to dismiss this case, or alternatively, to grant CSFB 2001-CP4 relief from the automatic stay.

2. **The Debtor's Conduct Constitutes "Bad Faith" Under The Criteria Identified By The Second Circuit**

As explained above, the Bankruptcy Code does not define bad faith in either 11 U.S.C. § 1112(b) or 11 U.S.C. § 362(d)(1). Accordingly, courts often weigh numerous factors to determine whether a debtor's filing was done in bad faith whether in the context of a motion to dismiss the underlying bankruptcy case under 11 U.S.C. § 1112(b) or a motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1). In re 68 West 127 Street, LLC, 285 B.R. 838, 843 (Bankr. S.D.N.Y. 2002).

---

F.3d 1304, 1310 (2d Cir. 1997) (explaining that "[t]he good faith standard applied to bankruptcy petitions furthers the balancing process between the interest of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy").

[3] In re 234-6 West 22nd St, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) See also In re Kaplan Breslaw Ash, LLC, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) (explaining that "the standards for bad faith as evidence of cause, whether in the context of dismissal or relief from the stay, are not substantively different from each other." Internal quotations omitted).

CSFB 2001-CP4_Dismiss     13

The Second Circuit has determined the presence of the following eight factors are adequate evidence that the debtor has filed for bankruptcy in bad faith, and therefore should not be granted the protections afforded under the Code:

> (i) the debtor has only one asset;
>
> (ii) the debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors;
>
> (iii) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (iv) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state court foreclosure action;
>
> (v) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (vi) the debtor has little or no cash flow;
>
> (vii) the debtor can not meet current expenses including the payment of personal property and real estate taxes; and
>
> (viii) the debtor has no employees.

In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997)

The eight factors listed above are not to be applied mechanically, as the existence of bad faith does not depend on any one factor, but on a combination of factors. See In re Nattel, LLC, 2007 U.S. Dist. LEXIS 39280 (D. Conn 2007); see also In re Shar, 253 F.R. 621, 629 (Bankr. D.N.J. 1999).

As discussed more fully below, applying these guidelines to the facts of this case, it is clear that this bankruptcy constitutes a classic "bad faith" filing, which should be dismissed.

**(i) The debtor has only one asset**

CSFB 2001-CP4_Dismiss               14

Debtor owns a single office building property asset, the Property.

**(ii) The debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors**

As of the date hereof, the Debtor's only other known creditors are those listed on the List of Creditors Holding 20 Largest Unsecured Claims filed by the Debtor on October 12, 2009, in the aggregate amount of approximately $348,000.00. These claims are certainly small in relation to the claim of CSFB 2001-CP4, which exceeds $19,684,475.27.

**(iii) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt**

As discussed above, CSFB 2001-CP4 initiated foreclosure proceedings in the Superior Court in September 2008, seeking to enforce its security interest in the Property. The Foreclosure Proceeding was initiated due to Debtor's default under the Loan Documents, for failure to make the payments due thereunder.

**(iv) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action**

Debtor and CSFB 2001-CP4 are the only two parties involved in the dispute relating to Debtor's default under the Note, and all of the issues relating to the dispute are currently part of the Foreclosure Proceeding in the Superior Court.

**(v) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights**

Debtor filed for chapter 11 protection on the second to last business day prior to the date scheduled for the hearing on the Receiver Application, staying the appointment of a receiver of rents. No objection to the Receiver Application was filed by the Debtor.

**(vi) The debtor has little or no cash flow**

CSFB 2001-CP4_Dismiss                    15

The Debtor has reported to Lender that it has collected rental revenue from the Property in the amount of $101,836.97 in September and $94,248.49 in October. The budget proposed by Debtor estimates monthly operating expenses in the amount of $127,198.00, which operating expenses do not include payments to Lender (debt service payments at the contract rate of interest on the initial principal balance of the Loan (i.e. without giving effect to, inter alia, protective advances made by Lender) alone exceed $122,000.00)). As such, the expenses of owning and operating the Property far exceed the revenues generated from the Property, thus leaving Debtor with no cash flow.

**(vii) The debtor cannot meet current expenses including the payment of personal property and real estate taxes**

Debtor has failed to pay all real estate taxes and insurance with respect to the Property. As explained above, CSFB 2001-CP4 paid the property taxes on the Property in the amount of $124,256.09, which were due in January 2009. The property taxes due in July 2009 have not been paid, and Debtor stated at the 341 Meeting that it does not have the ability to pay that bill.

**(viii) The debtor has no employees**

Upon information and belief, Debtor has no employees.

As set forth above, all eight (8) indicia of a bad faith filing are met. Moreover Debtor in this case clearly satisfies the criteria for determining whether a bankruptcy constitutes a "bad faith" filing. Accordingly, in accordance with Second Circuit precedent, this Court should dismiss this bankruptcy, or alternatively, grant the CSFB 2001-CP4 relief from the automatic stay.

3. **The Debtor's Violation of the Debtor's Loan Documents Constitutes "Bad Faith"**

In addition to satisfying the criteria identified by the Second Circuit, Debtor's "bad faith" in filing is further evidenced by Debtor's continuing violation of its loan documents and Debtor's failure to prosecute its bankruptcy proceedings in accordance with the Bankruptcy Code and this Court's rules. Debtor's violations of its Loan Documents and failure to prosecute its bankruptcy proceedings in accordance with the Bankruptcy Code and this Court's rules further show that Debtor did not exhibit "good faith" in filing for chapter 11 protection and accordingly Debtor's chapter 11 case should be dismissed for cause. As the Second Circuit has held "a lack of good faith in filing the petition constitutes cause".[4]

### Diversion of Cash

As set forth in Section I. D above, Debtor has diverted the cash collected from the Property for use by Gibbons and Rubenstein. Additionally, Debtor has without Court approval (and in at least one instance in violation of the Debtor's stipulation not to use cash collateral) paid pre-petition expenses from cash collateral. Said actions have been to the detriment of (i) the Property, (ii) tenants of the Property, and (iii) to the Debtor's secured lender. Accordingly, the diversion of cash from the Property constitutes cause for dismissal under 11 U.S.C. § 1112(b).

**B.     CSFB 2001-CP4 is not precluded from the relief sought by 11 U.S.C. § 362 (d)(3)**

---

[4] In re 698 Flushing Realty Corp., 335 B.R. 17, 19 (Bankr. E.D.N.Y. 2005) (explaining that, based on the precedent set forth by In re C-TC, the list of circumstances constituting cause for dismissal listed under section 1112 (b) is illustrative, not exhaustive. Accordingly, a court could find cause in a debtor's lack of good faith, even if the determinative factors are not listed in examples provided for under section 1112(b))

CSFB 2001-CP4 is not precluded from seeking the relief sought under section 362 (d)(1) by virtue of the addition of 11 U.S.C. § 362 (d)(3) to the Code.[5] Specifically, while section 362 (d)(3) has been interpreted to give the debtor of single asset real estate a breathing period of 90 days to prepare for a pending bankruptcy proceeding, it does not prevent a creditor from bringing an action for relief under any other section of section 362. In re Hope Plantation Group, LLC 2005 WL 3051533, at 3 (Bankr. D.S.C. 2007). ("Nothing in this opinion limits the rights of a creditor to pursue section 362 relief in a single asset real estate case under any other provision of that section for cause, lack of adequate protection, or any other grounds therein").

### III. CONCLUSION

For the reasons set forth above, CSFB 2001-CP4 requests the Court to dismiss the within bankruptcy case, or alternatively, to grant CSFB 2001-CP4 relief from stay.

Respectfully submitted,

*[signature]*

Nicholas H. Mancuso (ct26732)
**MANCUSO & LOGAN LLC**
1233 Silas Deane Highway, Suite 1
Wethersfield, CT 06109
(860) 257-9500
(860) 257-9509 (fax)
nmancuso@mancusologan.com

---

[5] 11 U.S.C. § 362 (d)(3) provides, in relevant part: (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief....

CSFB 2001-CP4_Dismiss 18

                                             Katherine A. Burroughs (ct03233)
                                             Robert E. Grady (ct22565)
                                             **DECHERT, LLP**
                                             90 State House Square
                                             Hartford, Connecticut  06103
                                             Phone:  (860) 524-3953
                                             Fax:  (860) 524-3930

                                             Counsel for CSFB 2001-CP4
                                             Research Drive, LLC